**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EULICES ANTONIO CHAVES RIVERA,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Defendants. | Case No. 3:25-cv-10474-BLF<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>[Re: ECF No. 2] |

Before the Court is Petitioner Eulices Antonio Chaves Rivera's Ex Parte Application for a Temporary Restraining Order ("TRO"). ECF No. 2. Mr. Rivera filed his Petition for Writ of Habeas Corpus followed by an Ex Parte Application for Temporary Restraining Order against Respondents Acting Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran; Acting Director of ICE Todd M. Lyons, Secretary of the Department of Homeland Security ("DHS") Kristi Noem, and United States Attorney General Pamela Bondi on December 5, 2025, seeking an order temporarily enjoining Respondents from detaining him until such time as he has had an opportunity to challenge his detention before a neutral decisionmaker. ECF No. 1 ("Pet.").

The application is GRANTED.

**I.  BACKGROUND**

According to the petition and request for TRO submitted by Mr. Rivera, Mr. Rivera is an asylum seeker who fled Colombia when he was forty years old and has been in the United States for more than three years. He has no criminal history. He was initially detained on August 10, 2022, and later paroled on September 12, 2022. Pet. ¶¶ 2, 6. Mr. Rivera was released with an order to comply with periodic check-ins with ICE pursuant to his order of supervision. Pet. ¶ 6.

1   He submitted his application for asylum in August 2023, which was dismissed on June 12, 2025.

2   He was then scheduled for a credible fear interview and he remained in compliance with all

3   reporting requirements. Pet. ¶ 7. He missed his scheduled credible fear interview on November 7,

4   2025, because the notice was mailed to an old address, even though he had previously filed a Form

5   AR-11 Change of Address with United States Citizenship and Immigration Services ("USCIS").

6       In compliance with instructions from ICE, Mr. Rivera presented himself for a scheduled

7   check-in at the San Francisco ICE Field Office located at 630 Sansome Street on December 5,

8   2025. Pet. ¶ 9. Mr. Rivera's appointment was for December 4, 2025, but he confused the dates

9   and presented himself at the office the next day. Pet. ¶ 9. ICE agents arrested Mr. Rivera and

10  took him into custody without providing any known reason for the detention, despite his

11  compliance history and while DHS was actively coordinating with counsel regarding the

12  rescheduling of his credible fear interview. Pet. ¶ 10.

13      Mr. Rivera alleges that his arrest and detention have caused immense psychological,

14  economic, and physical harm, including deprivation of hygiene, sleep, and nutrition. Pet. ¶ 10.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Mr. Rivera's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.

The Court finds that Mr. Rivera has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips *sharply*" in his favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv-05785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434,

3

2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

    For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Mr. Rivera be immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

    Mr. Rivera has a substantial private interest in remaining out of custody, which would allow him to live at home, work, and continue to provide for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Like other courts in this district, this Court concludes that the government's interest in re-detaining Mr. Rivera without a hearing is "low," particularly in light of the fact that he has appeared for prior immigration hearings and does not have a criminal record. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970. Mr. Rivera is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here.

    Finally, the balance of the equities and the public interest, which merge because the government is the opposing party, tip sharply in Mr. Rivera's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been

4

violated, because all citizens have a stake in upholding the Constitution.").

Without the requested injunctive relief, Mr. Rivera faces deprivation of his liberty. The comparative harm potentially imposed on Respondents is minimal—a mere short delay in detaining Mr. Rivera, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). This Court therefore joins a series of other district courts that have recently granted TROs barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker. *See, e.g., Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 3290223 at *2 (N.D. Cal. Aug. 22, 2025); *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025).

Although Mr. Rivera filed his motion shortly after being detained, rather than immediately beforehand, the same reasoning applies to his situation. His liberty interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain him without the required hearing is low. *See Doe v. Becerra*, No. 25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier). Mr. Rivera's immediate release is required to return him to the status quo. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Mr. Rivera's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a TRO requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Accordingly, the Court hereby GRANTS Mr. Rivera's Ex Parte Motion for a Temporary Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the

5

1  court considers proper to pay the costs and damages sustained by any party found to have been
2  wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The rule "invests the district court 'with
3  discretion as to the amount of security required, if any,'" and the court "may dispense with the
4  filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from
5  enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting
6  *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  In this case, in light of the
7  minimal risk of harm to the government, the Court determines that security is not required.

**IV.   ORDER**

IT IS HEREBY ORDERED that:

(1) Mr. Rivera's request is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ENJOINED from transferring Mr. Rivera out of this district or deporting him pending these proceedings.

(3) Respondents are ORDERED to immediately release Mr. Rivera and ENJOINED AND RESTRAINED from re-detaining Mr. Rivera without notice and a pre-deprivation hearing before a neutral decisionmaker.  This Order shall remain in effect until December 19, 2025, at 4:45 p.m.

(4) The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and no later than December 8, at 5:00 p.m., and Mr. Rivera shall file proof of such service by no later than December 9, 2025, at 5:00 p.m.  Email service is permitted.

(5) Respondents shall provide a status report confirming Mr. Rivera's release by December 9, 2025, at 5:00 p.m.

(6) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing before the undersigned on December 15, 2025, at 9:00 a.m., why a preliminary injunction should not issue.  Respondents shall file a response to Mr. Rivera's motion by no later than December 10, 2025, at 12:00 p.m.  Mr. Rivera may file a reply by December 12, 2025,

6

1           at 12:00 p.m.

2    Dated:  December 5, 2025, at 4:45 p.m.

3    _____
   BETH LABSON FREEMAN
4    United States District Judge

7